[Crim. No. 1412.   Second Appellate District, Division One.—March 9, 1927.]

## THE PEOPLE, Respondent, v. C. R. BEALEY, Appellant.

[1] CRIMINAL LAW—ADULTERY—EVIDENCE—VERDICT.—In this prosecution for adultery, under section 269a of the Penal Code, evidence that defendant and a woman, not his wife, were found in a living-room attached to a private garage, that they had lived there for more than three weeks and were often seen together, and that defendant admitted intercourse with her, was sufficient to support the verdict of conviction.

[2] ID.—EVIDENCE—CONCLUSION OF WITNESS—HARMLESS ERROR.—In such prosecution, it was harmless error for the trial court to refuse to strike out the conclusion of a witness that defendant "lived a part of the time in a house 200 feet away, and the rest of the time in a garage 50 feet away" from the house in which the wife of defendant resided, where such conclusion followed from the facts testified to by the witness and from the testimony of other witnesses.

[3] ID.—SILHOUETTES—IDENTIFICATION—EVIDENCE.—In such prosecution, the refusal of the trial court to strike out the testimony of a witness that he saw silhouettes of persons similar to defendant and the woman was not error, the question of whether defendant and the woman were the persons whose silhouettes were seen by the witness being for the jury.

---

(1) 36 C. J., p. 1036, n. 34, p. 1043, n. 49.   (2) 17 C. J., p. 333, n. 78.   (3) 36 C. J., p. 1042, n. 38.

1.  What constitutes living in open and notorious adultery, notes, 113 Am. St. Rep. 271; L. R. A. 1918F, 595. See, also, 1 Cal. Jur. 466; 1 R. C. L. 637. What constitutes living together or cohabiting, note, 19 Ann. Cas. 655.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. Charles L. Allison, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur C. Webb for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

HOUSER, J.—Under the provisions of section 269a of the Penal Code, a jury found defendant guilty of the offense of living in "a state of cohabitation and adultery" with a woman who was not the wife of defendant. From the judgment and the order denying defendant's motion for a new trial, defendant appeals to this court.

While the evidence was somewhat conflicting, the jury was authorized to conclude therefrom that the following facts were established: That about a "quarter to eleven" o'clock on the night of March 23, 1926, under authority of a search-warrant for intoxicating liquor, two deputy sheriffs went to a private garage, which, in addition to housing an automobile, had a living-room attached thereto and in which defendant and the woman in question were at least temporarily sojourning; that on arriving at the garage one of the deputy sheriffs several times demanded of defendant admittance into the room at that time occupied by defendant and the woman, to which demand the defendant responded, "What is your hurry? Wait a minute; give me some time," all of which was repeated by defendant several times; that after waiting two or three minutes the deputy sheriff kicked in the door, and upon entering the room, which contained a bed, a dresser, an oil-stove, a few dishes, and a lot of men's and women's clothing, he found defendant standing beside the bed putting on his coat and vest, and the woman was in the bed, with the bed-covering and pillow next to the wall in a disordered condition, while the bed-covering over the woman was pulled over her very smoothly; that defendant and the woman had been living in the garage for more than three weeks; that during such time it was the custom of defendant to leave the garage in the

morning between 7 and 7:30 o'clock, return about noon, leave again about 1 o'clock P. M. and again return at about 5 o'clock in the afternoon; following which defendant and the woman would dress and go out together, and thereafter return to the garage at about 8:30 or 9 o'clock P. M., after which the lights in the garage would be extinguished; that on several occasions both defendant and the woman were seen in the garage dressing and undressing, and particularly that defendant was seen therein putting on his nightshirt, and that defendant had admitted that he had had sexual intercourse with the woman.

The principal contention of appellant is that the evidence was insufficient to support the judgment.

Section 269a of the Penal Code provides, in part, that: "Every person who lives in a state of cohabitation and adultery is guilty of a misdemeanor . . . "

[1] It is therefore necessary to determine whether the evidence to which reference heretofore has been had was sufficient to support the charge that defendant did wilfully and unlawfully live and cohabit with the woman whose name is specified in the information.

In the case of *People* v. *Breeding*, 19 Cal. App. 359, 362 [126 Pac. 179], it is said: "As used in the statute, the words 'living in a state of cohabitation and adultery,' mean the living or dwelling together as husband and wife and exercising the sexual rights and duties implied by such relation when legally created—in other words, a counterfeit of the marriage relation. Hence, to justify the conviction of defendants it should appear from the evidence that there existed between them an adulterous cohabitation, . . . " (See, also, to the same effect, *People* v. *King*, 26 Cal. App. 94, 95 [146 Pac. 51].)

In the case of *People* v. *Scarpa*, 32 Cal. App. 453 [163 Pac. 882, 883], a judgment of conviction was upheld by the district court of appeal and a petition for rehearing in the supreme court denied on facts which possibly were less convincing than those presented by the evidence in the instant case. In the Scarpa case it appeared that each of the guilty parties was married, and that during all the time in question Scarpa was actually living with his wife, and the woman with whom he sustained the adulterous relation was also living with her husband; that Scarpa and the woman

were "often seen riding or driving together, and on several occasions were observed in attitudes and actions which were strongly suggestive of an undue and illicit intimacy"; that on a number of occasions the defendant took the woman to his home during his wife's absence and there remained with the woman overnight; that on one of such occasions, in the morning the woman went to a butcher-shop and bought meat for breakfast, having it charged to the defendant; that on one occasion the defendant boasted to a friend that he "had a chicken up at his ranch"; that finally the defendant and the woman visited a near-by city, called at several stores and eating places, walked arm-in-arm down the street, and thereafter went to a hotel where the defendant registered himself and his companion as "J. Jones and Wife, Mountain View," and secured a single room, which the pair occupied together for about three days, at the end of which time their apartment was entered by detectives, who found them in a state of undress and apparently occupying the same bed. Concerning the sufficiency of the evidence in the Scarpa case, the court, in part, said:

"We are of the opinion that section 269b of the Penal Code, as amended in 1911, was intended by the legislature working its amendment through the elimination from the former section of the words 'open and notorious,' to have application to those persons who, while each was simulating continence in their marital relations, were at the same time maintaining such a course of illicit and adulterous conduct with another of the opposite sex as would constitute a counterfeit of the marriage relation. We think that such a state of cohabitation and adultery would not only be possible, but that the evidence in the case before us was amply sufficient to have justified the jury in finding that such a condition existed between the defendant and the woman in the case . . . and we think that . . . such a continuous course of illicit conduct had existed as would amount to their living together in a state of cohabitation and adultery, and as thus sufficing to satisfy the terms of the Penal Code rendering such conduct criminal."

From the law as announced in the foregoing authorities, and considering that the jury had a right to assume that the facts in the instant case were as hereinbefore have been set

forth, it is clear that the verdict was fully justified and that it was supported by the evidence.

[2] Appellant also specifies error in that the trial court denied defendant's motion to strike out as a conclusion the answer of a witness in substance that defendant "lived a part of the time in a house 200 feet away, and the rest of the time in a garage 50 feet away" from the house in which the wife of defendant resided. While in a sense the answer was a conclusion, not only did the particular witness testify to facts from which such conclusion would follow, but several other witnesses did likewise. It is therefore apparent that no harm resulted to defendant by reason of the ruling to which exception was taken.

[3] Appellant urges additional error committed by the trial court in denying defendant's motion to strike out a portion of the testimony of another witness relating to what he saw through a window of the garage. The alleged objectionable testimony, in effect, was that at night the witness could see silhouettes of persons very similar to defendant and the woman "dressing and undressing, combing their hair and washing, whatever they were doing, cooking." The basis of the motion made by defendant was that the persons whose silhouettes were seen by the witness were not identified as the defendant and the woman in question. While the identification was not absolute in that the witness stated, in effect, that he could not determine from what he saw through the window "whether or not it was the defendant," the witness did testify "that they were very similar to the two persons themselves"; that he had known the defendant for about four years, knew that he was living in the garage, which was located about 100 feet from the home of the witness; that before the time the witness saw the silhouettes he "had seen Mr. Bealey and the woman go to the garage and not come out"; and that he had thus observed the defendant through the window "practically every night . . . ; that he (defendant) was there during the month of March or previous, . . . several nights."

It thus becomes manifest that the question of whether defendant and the woman were the persons whose silhouettes were seen by the witness was a proper one for the consideration of the jury, and that no error was committed by the trial court in refusing to strike out the testimony to which exception was taken.

No prejudicial error appearing in the record, it is ordered that the judgment and the order denying the motion for a new trial be and they are affirmed.

Conrey, P. J., and York, J., concurred.