[Civ. No. 13564.   Second Dist., Div. Three.   Jan. 29, 1943.]

THE PEOPLE, Respondent, v. AUBERT E. ROBIN et al., Appellants.

Aubert E. Robin, in pro. per., and J. Howard Sullivan, Ray C. Eberhard, Claire V. Eberhard and Alfred J. Luke for Appellants.

Ray L. Chesebro, City Attorney, W. Jos. McFarland, Assistant City Attorney, and John L. Bland and Wm. U. Handy, Deputies City Attorney, for Respondent.

BISHOP, J. pro tem.—A civil action to abate one or more of the public nuisances defined by sections 3479 and 3480, Civil Code, existing in a city, may be brought by the city attorney in the name of the People of the State of California. (Code Civ. Proc., § 731.) Sections 3479 and 3480 do not embrace all public nuisances known to the law; they read: Section 3479. "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway is a nuisance." Section 3480. "A

public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.'' This action was brought under section 731 by the Los Angeles City Attorney to put an end to public nuisances allegedly existing in the city as a result of the conditions which the defendants permitted to arise in connection with the operation of their respective cafes. A judgment was entered, enjoining the defendants from a variety of activities, and the defendants Aubert E. Robin, Jack Lunsford and Luther J. Smith have appealed. We find our principal problem to be to determine which of the prohibitory provisions of the judgment find support in the law and the findings.

█ It is not every public nuisance known to the common law that may be the subject matter of an action of this type. When the judgment appealed from was entered this proposition was debatable, but it is no longer an open question in this state since the decisions in *People* v. *Lim,* (1941) 18 Cal.2d 872 [118 P.2d 472], and *Kreling* v. *Superior Court,* (1941) 18 Cal.2d 884 [118 P.2d 470]. It is now settled that a court of equity has no authority to abate a public nuisance except in those specific cases where authority has been granted by the Legislature. Insofar, therefore, as the judgment in the present action covers matters which do not fall within the purview of section 731, Code of Civil Procedure, it is without validity.

█ There is another limitation upon the provisions which may properly be given place in a judgment such as that under review; it is that the restrictions of the decree should be within the issues of the case. Of actions not threatened it cannot be said that unless enjoined they will occur. A judgment prohibiting a defendant from doing that which neither past acts nor present intent indicates he is likely to do unless prevented by a court of equity, is an erroneous exercise of equitable jurisdiction. (*Pezold* v. *Amalgamated Meat Cutters etc.,* (1942) 54 Cal.App.2d 120, 127 [128 P.2d 611, 615], and cases cited.) The rule is stated in 32 C.J. 379, in these words: ''Nor should the injunction forbid the doing of acts which there is no evidence to show had been committed or threatened to be committed.''

The judgment entered in this case quite obviously violates both principles we have noted; it attempts to enjoin acts which the Legislature has not authorized the court to prohibit

in such an action as this, and it endeavors to cover situations not within the field of this action. In division I of the judgment it is decreed that defendant Robin and his agents are perpetually enjoined and restrained:

"(a) From unlawfully selling, serving, or giving away intoxicating liquor, or permitting, suffering, consenting to or acquiescing in the unlawful selling, serving, or giving away of intoxicating liquor in or upon the premises [described] or upon any premises now or hereafter under the control of said defendant;

"(b) From permitting, suffering, consenting to or acquiescing in the practice of prostitution or the soliciting or offering of acts of prostitution on said premises or upon any premises now or hereafter under the control of said defendant, or from permitting, suffering, consenting to or acquiescing in the use of said premises as a rendezvous for prostitutes or persons of immoral character;

"(c) From permitting, suffering, consenting to or acquiescing in the congregating, visiting, or loitering of persons of immoral character in or upon the said premises or in or upon any premises now or hereafter under the control of said defendant;

"(d) From permitting, suffering, consenting to or acquiescing in fighting, disorderly or tumultuous conduct, shouting, cursing, swearing, or using vile or opprobrious language in a loud tone of voice, boisterous conversation, or the playing of loud, blaring music in or upon the said premises or upon any premises now or hereafter under the control of said defendant or on the streets immediately adjacent thereto;

"(e) From permitting, suffering, consenting to or acquiescing in any breach of the peace in or upon the said premises or upon any premises now or hereafter under the control of said defendant, or on the streets immediately adjacent thereto; and

"(f) From using, causing, permitting, suffering, consenting to or acquiescing in the use of said premises or of any premises now or hereafter under the control or management of said defendant, or any part thereof, or any building, structure or appurtenance thereon, or the public streets immediately adjacent thereto, in any manner injuriously affecting the health, safety, or morals of or the comfortable enjoyment of life and property by persons residing in the community or neighborhood about and adjacent to any of said premises."

Division II of the judgment contains provisions identical with

those just quoted (except for a different description of the premises involved), in perpetual restraint of defendant Lunsford, and division IV in identical terms (again the premises differ) restrains defendant Smith.

█ Subdivisions (a) of these decrees run afoul of both the principles by which we are testing the judgment. Places where liquor is unlawfully sold have been declared by the Legislature to be nuisances (Stats. 1915, p. 236, Deering's General Laws, 1937, Act 3778), and district attorneys in the name of the People and individuals in their own names are given authority to bring actions to abate such nuisances. We are of the opinion that it cannot be validly claimed, and no claim has been made, that the present action finds authority in the statute just referred to. The source of the authority for the action before us is, as set forth in the complaint, section 731, Code of Civil Procedure. As the unlawful sale of liquor, of itself, without further facts, does not constitute a nuisance within the terms of section 3479, Civil Code, it follows that the provisions in the judgment in this action enjoining the defendants from making unlawful sales, is without legislative authority and therefore erroneously included, for the only findings on the subject of the alleged unlawful sale, et cetera, of intoxicating liquors, were in the negative; and while they were negatives pregnant ("it is not true that . . . said defendants and each of them have sold or served liquor") there are no findings that any of the defendants had sold or threatened to sell liquor out of hours, to minors, or otherwise illegally. The decrees that they be prohibited from doing so were therefore without support in the findings.

█ Subdivisions (e) and (f) of the judgment are too broad and too indefinite to be valid provisions of a decree in equity. At the time of oral argument counsel for the plaintiff agreed that this was true, at least as to subdivision (f), and the matter merits no argument. █ The reference to "any premises now or hereafter under the control of said defendant" found in several of the prohibitory provisions also gives those provisions an invalid scope. So far as appears no one of the appellants has or threatens to operate a cafe, or to do any of the acts enjoined at any other place than at the premises involved in this action. But if he did, it might well be at an isolated location where any nuisance he maintained would not affect any part of a neighborhood or any considerable number of people and so would not be a public nuisance. That which we have before us is a decree in equity, not the terms under which

the defendants are granted probation. The object of the decree is to protect the public from nuisances, not to reform the defendants.

The doubts which first assailed us about the sufficiency of the findings to support subdivisions (b), (c) and (d) of the judgment cannot stand in the face of the conclusion reached in *People* v. *Lim, supra,* (1941) 18 Cal.2d 872, 882 [118 P.2d 472, 477], that the following allegations stated a sufficient cause of action under section 731, Code of Civil Procedure: ''[the gambling house] draws together great numbers of disorderly persons, disturbs the public peace, brings together idle persons and cultivates dissolute habits among them, creates traffic and fire hazards, and is thereby injurious to health, indecent and offensive to the senses and impairs the free enjoyment of life and property,'' and in the light of this comment: ''Crowds of disorderly people who disturb the peace and obstruct the traffic may well impair the free enjoyment of life and property and give rise to the hazards designated in the statute.'' If the allegations quoted are sufficient to state a cause of action under the section, findings to the same effect are of course sufficient to support a judgment for the relief authorized by the section, and we have such findings relative to the matters covered by subdivisions (b), (c) and (d).

There has been considerable argument about the responsibility of one defendant for a condition constituting a nuisance which is not caused by his operations alone, but by the joint operations of himself and others. The trial court did find that the acts of the several defendants united to constitute a nuisance, but it also found that the acts of each separately were nuisances (to be more exact, that they drew together in the same neighborhood large numbers of disorderly persons, etc., etc.). Each appellant, therefore, appears responsible for the acts the judgment enjoins him from continuing, and there is no occasion to determine the terms a judgment should contain which abates a nuisance that is the result only of joint action. (See *Willson* v. *Edwards,* (1927) 82 Cal.App. 564, 569-572 [256 P. 239, 241].)

We have not considered it necessary to search the 1,300 pages of the reporter's transcript to ascertain whether each one of the many findings was supported by the evidence, because of the position of the appellants on the subject, which is virtually this: there is no credible evidence to support the essential findings. Note, for example, this statement from

their opening brief (of 21 pages): "Stephen K. Newhall, called by the plaintiff recited a long statement of purported facts that, if true, would make their neighborhood worse than the Barbary Coast of San Francisco ever was; yet he testified he never saw an arrest there even though he stated he called the police one hundred fifty times. His statements are so fantastic they are incapable of belief when compared with those of Officer Jasper W. Smith. . . ." We have examined the record enough to find many substantial "scintillas" of evidence, and we accept the judgment of the trial court that the witnesses who testified to the conditions, which constituted public nuisances, were to be believed.

█ Appellant Robin argues that he should not have been enjoined, as were his codefendants, because before the time of the trial he had ceased to be the proprietor of the cafe that bore his name. By the pleadings, Robin's status as the proprietor of the Robin cafe was admitted, and there was no evidence that he had ceased to be in a position to continue to operate it if he chose to do so. His testimony that he had operated the cafe for "close to three years" ". . . terminating when?" "In February of this year," falls short of proof that he had lost his lease or had no legal right or intention to continue as its proprietor. From the opening statements of counsel we gather that it was their understanding that Robin had had his lease forfeited, but unsworn statements by counsel not intended to be and not amounting to stipulations of fact, do not constitute evidence in harmony with which a trial court is bound to make a finding.

The judgment is accordingly modified: (1) by striking subdivisions lettered (a), (e) and (f) from divisions numbered I, II and IV; (2) by striking the words "or (in or) upon any premises now or hereafter under the control of said defendant" from subdivisions lettered (b), (c) and (d) of divisions numbered I, II and IV; as so modified the judgment is affirmed; each party shall bear his own costs of appeal.

The appeals from the order denying appellants' motion for a new trial are dismissed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.