[Civ. No. 14927. First Dist., Div. One. Feb. 14, 1952.]

DON HUCKE et al., Respondents, v. DAN KADER et al., Appellants; CITY OF OAKLAND et al., Cross-Defendants.

Hamilton Wright and Alfred Nelson for Appellants.

Gilbert D. Calden for Respondents.

BRAY, J.—Defendants appeal from a judgment restraining them from interfering with plaintiffs' use of a certain road.

## QUESTIONS PRESENTED

1. Does the complaint state a cause of action?
2. Is the judgment uncertain and indefinite?
3. Are additional findings necessary?
4. (1) On a private roadway over which several home owners have rights of ingress and egress may one owner maintain a "Private Road" sign? (2) May a majority of the home owners maintain the sign "Glendome Circle" thereon?

## RECORD

The complaint, after alleging the character of the roadway in question as being one over which the property owners. fronting thereon had permanent nonexclusive rights of ingress and egress thereover, and. that plaintiffs and defendants were such owners, alleged that defendants for a long time had obstructed said roadway and interfered with plaintiffs' rights therein, and sought an injunction to restrain defendants from such obstruction and interference. Defendants answered, admitting plaintiffs' rights, but denying any obstruction thereof or interference therewith. They then cross-complained, joining the city of Oakland and two of its officers as cross-defendants, alleging that the roadway is not a public street or highway; that defendants' home is at the entrance of said roadway; that they have been disturbed day and night by all kinds of vehicles passing and repassing and interfering

with defendants' free use and enjoyment of their easement on said road. It is alleged that the cross-defendants wrongfully erected a sign at the entrance reading ''Glendome Circle'' and that this sign encourages the public to use the road as a public street, causing a burden upon defendants' easement by reason of noise, offensive odors, frequency of use by the public and obstruction of defendants' easement. They pray that all cross-defendants be enjoined from so obstructing or interfering with defendants' rights.

The court found that the parties (other than the city of Oakland) had the easements in the road alleged in their respective pleadings, but that defendants were obstructing the road and interfering with plaintiffs' free use thereof, had deliberately diverted plaintiffs' visitors, had threatened to bisect the road by a curb, represented the road to be a private one for their exclusive use, and had precluded plaintiffs from the full and free use of their easement, and had refused to discontinue these acts. The judgment enjoined defendants from obstructing the road or interfering with its use by plaintiffs and their visitors.

## FACTS

Some years ago one Heroux subdivided a tract of land in Oakland. He prepared a map of it but never recorded the map. On the map appears a roadway designated ''Glendome Circle (not dedicated)'' which starts at a public street, ''El Centro,'' and connects with (or is an extension of) a private road which traverses the tract in somewhat of a loop for about 538 feet, ends at El Centro and Hollywood Avenue some distance from where Glendome Circle started. Fronting on the roadway are a number of lots, of which plaintiffs own one in the interior of the tract and defendants own one at the corner of the easterly extremity of the private road and El Centro at Hollywood Avenue. Actually there are only four homes, including those of the parties, on the road. Defendants' home is built close to the roadway which at that point is only 16 feet wide. Glendome Circle is 26.29 feet wide. The persons living on the road give Glendome Circle as their postal and residence address. It is conceded that the parties, as well as other owners in the tract, are the owners of a non-exclusive easement and right of way on and over the roadway and that it is not a public road or street. According to plaintiff Don Hucke his difficulties with defendants started about 1946, shortly after Heroux, the subdivider, died. He

testified that defendants for several months placed their car at almost a diagonal across the entrance to the circle, so that it was impossible to get through, especially for trucks intending to deliver to plaintiffs' home; that at one time in front of defendants' premises there was a long bar supported across the road which constituted a full road block. Defendants claimed that this was only there while they were repairing the road and that they never blocked the road, merely parking their car beside their garage. While there is a conflict in the testimony and defendants denied any of the acts of obstruction testified to by plaintiffs and their witnesses, there is substantial evidence to the effect that defendants stated that they owned the road and were going to stop plaintiffs from using it if they could and that they threatened to install a curb bisecting the road and thereby closing it. Defendants installed a sign, "Private Road," at the entrance to the road. Plaintiff testified that this confused some of his visitors who concluded that the private road, Glendome Circle, was a private entrance to somebody's home. There is considerable conflict as to when the sign "Glendome Circle" was first put up. Plaintiff testified it had been there off and on since 1939, and that it was first removed in 1948. Defendants claim that it was not there prior to 1947. Mrs. Coffee, a resident on the roadway, testified it had been there for the last 10 years. Oakland's traffic engineer thought the sign was first put up about 1946. The basis of the dispute between the parties is that defendants want the general public kept off the street. Plaintiffs do not. Defendants testified that prior to the erection of the street sign the traffic was light but thereafter it increased 70 to 80 per cent. Defendant Dan Kader admitted, however, that during the last three weeks when the sign was down he noticed no diminution in traffic. Defendants contend they cannot keep their windows open day or night because of the noise and fumes of passing traffic. Defendants testified that the purpose of the "Private Road" sign was not to keep plaintiffs out, but to discourage heavy traffic. Defendant Anna Kader admitted stopping a garbage man because he stopped his truck by her bedroom window.

## 1. The Complaint

Defendants' objections to the complaint are captious. As to defendants' acts, the complaint alleges that for a long time past defendants have wrongfully obstructed the right of way by so parking their automobile as to obstruct and interfere

with its free use by plaintiffs and their visitors; that defendants have deliberately diverted plaintiffs' duly authorized visitors who were seeking to use the road; that defendants, seeking to obstruct plaintiffs in their free use of the easement, have installed a sign reading "Private Road" at its entrance, for the sole purpose of wrongly diverting duly authorized individuals; that defendants have threatened to install a curb bisecting the right of way; that defendants have represented it as a private road for their own exclusive use and have precluded plaintiffs from a full and free use of the road; that defendants refuse to discontinue its obstruction, as alleged, and threaten to and will continue to do so unless restrained, "to the irreparable damage of the plaintiffs." Plaintiffs allege damages, but during the trial waived any claim thereto. Apparently, defendants' main criticism of the complaint is that the allegations that plaintiffs are irreparably damaged and that plaintiffs have no plain, speedy or adequate remedy at law, are conclusions, and their contention that equity will not restrain by injunction the commission of "a mere ordinary or naked trespass." (32 C. J., p. 133, § 177.) They cite cases in which it is held that allegations of irreparable injury are mere conclusions. ■ It is obvious that the complaint states a cause of action, as it states the facts upon which the conclusions are based. The continuing interference with plaintiffs' right to use the easement are facts which show irreparable injury. It is fatuous to contend that plaintiffs are relegated to their right to damages. The interference is a continuing injury and if not restrained would require constant suits for the daily occurrence. The facts alleged show more than "a mere ordinary or naked trespass." It should be pointed out that defendants' cross-complaint is in the very form and contains the same "conclusions" that they criticise in plaintiffs' complaint.

## 2. JUDGMENT

■ It provides *"that the plaintiffs have judgment as prayed for in this complaint*; that the defendants . . . be perpetually enjoined and restrained from interfering with and obstructing the road . . . as well as from in any manner interfering with the plaintiffs' use of said road by so parking their automobile upon said road as to obstruct its free use and interfere with the right of access and egress to and from plaintiffs' premises for the plaintiffs and their visitors . . . by threatening to install a curb bisecting the road, by represent-

ing said road as a private road for their own exclusive use, and by other acts calculated to prevent the plaintiffs from their free enjoyment of said way." (Italics added.)

It is not clear just what the meaning of "plaintiffs have judgment as prayed for in this complaint" is. As the judgment thereafter details the specific acts enjoined this phrase should be deleted from the judgment. It is uncertain and indefinite. Defendants also contend that the phrase which enjoins them from "*in any manner* interfering with the plaintiffs' use of said road by so parking their automobile" etc. (italics added), is too broad, and cite cases like *People* v. *Robin*, 56 Cal.App.2d 885 [133 P.2d 436], holding that under the circumstances of the particular case, the use of the words "in any manner" is too broad. However, that principle is not applicable here. In the above phrase "in any manner" is modified by the words "by so parking their automobile" as to obstruct plaintiffs' free use of the road. Thus defendants are only enjoined from so using the street as to interfere with plaintiffs' rights. The judgment must be construed reasonably and does not require, as defendants attempt to construe it, that defendants may not park their own car on the road, provided, of course, it is not so parked as to interfere with the use of the road by plaintiffs and their visitors. Although the road is only 16 feet wide, if defendants park in the customary manner such parking would not interfere with plaintiffs' rights. The rights of both parties in the road are nonexclusive. ▪ Again, "other acts calculated to prevent the plaintiffs from their free enjoyment of said way" is not too indefinite, nor is it a violation of section 525, Code of Civil Procedure. While this clause is somewhat general, it is particularized by the requirement that the prohibited acts be ones calculated to prevent plaintiffs from the free enjoyment of the right of way. ▪ It is unnecessary in a judgment to set forth in minute detail all the acts which defendants have performed or threaten to perform which interfere with plaintiffs' rights. Again, here, the judgment must be interpreted reasonably in view of the nonexclusive rights of the parties.

Defendants contend that because they testified they always recognized the rights of all the owners along the road and had never done anything to the contrary, the injunction could not lie. This completely ignores the testimony of plaintiffs and their witnesses.

### 3. Additional Findings

■ Defendants contend that the findings omitted to mention that the easements of the respective parties are *permanent* ones. The court's finding on the subject is "that it was expressly agreed and understood between the appurtenant property owners, that each owner had and would have, in accordance with his respective deed, an easement" etc. Inasmuch as the easements and their permanency were never questioned in the case, this finding is sufficient. It shows that the parties have such easements in accordance with their respective deeds.

■ The court did not find in so many words that Glendome Circle is not a public street. No one contended that it is. Defendants in their answer asked that the court grant the right to maintain the sign "Private Road." In their cross-complaint they alleged that the "Glendome Circle" sign was an infringement of their rights. They did not ask in the prayer, in express terms, for its removal. However, its removal was an issue in the case. Cross-defendant city of Oakland did not allege that the circle or the private road was a public street. They did allege that the city had erected the sign at the insistence of all the residents along the road, and that the city had no interest in whether the sign remains or is removed. It then asked the court to direct either the posting of the sign or its removal, as the evidence determined. The court made no finding on the subject, other than the fact that at the time of the submission of the cause the sign was down, nor did it refer to it in the judgment. Nor did the court expressly find on the subject of the maintenance by defendants of the "Private Road" sign. The evidence shows that defendants are the only ones who object to the "Glendome Circle" sign. Plaintiffs contend that the "Private Road" sign makes visitors to the area conclude that the road only goes to one home. The court should have made a finding on the subject. ■ There is no question but that the road is actually a private road, namely, a road over which the four owners have an easement. In view of that fact, we can see no reason why the mere maintenance of a sign "Private Road" at its entrance is not a right which defendants have in enjoying their nonexclusive easement over the roadway. While their deed describes the private road as "running from Glendome Circle to Hollywood Avenue" and perhaps the legend "Glendome Circle" on the map only referred to that short portion of the road extending from the westerly end of the

private road to El Centro (the map is subject to the interpretation that the term "Glendome Circle" includes the private road), we can see no reason why the majority owners may not call their roadway any name they want and erect a sign at its entrance. Particularly is this so when they choose the name of a roadway of which the private road is an extension. We see nothing inconsistent in the maintenance of the two signs, nor any interference thereby in the rights of the easement owners. If the city of Oakland, without claiming any rights in the road, is willing to erect and maintain a sign there at the request of the majority owners, we see no difference from a situation in which the majority erected the sign themselves or hired a carpenter to put it up. Neither party has any right to represent that either sign gives them more rights than appear in their respective deeds.

Considerable of the difficulty here would be avoided if the "Private Road" sign appeared on the same post, just below the "Glendome Circle" sign, rather than for the signs to be on two separate posts. At the oral argument, both parties agreed that the trial court should have made findings on the subject of the signs, although, of course, they disagreed on what the findings should be.

We have the power to amend the findings and judgment. (Code Civ. Proc., § 956a.) The findings are amended to provide that plaintiffs are entitled to install and maintain at the junction of the private road and El Centro Avenue the sign "Glendome Circle." This sign may be erected and maintained by any agency designated by plaintiffs or by cross-defendant city of Oakland, provided said city makes no claim to the road as a public street. Defendants may maintain at said location, preferably on the same post as the above sign, a sign "Private Road," and the erection and maintenance of both signs are consistent with the rights of the parties under their respective easements.

The judgment is amended by striking therefrom the words "that the plaintiffs have judgment as prayed for in this complaint" and by inserting therein, at the end thereof, the following: Plaintiffs may erect and maintain at the junction of the private road and El Centro Avenue a sign containing the words "Glendome Circle." Such erection and maintenance may be by plaintiffs or any agency designated by them, or by cross-defendant city of Oakland as long as said city makes no claim to the road as a public road. Defendants Kader may

erect and maintain a sign with the words "Private Road" thereon, at the entrance to said road, but preferably on the same post as and below said sign "Glendome Circle."

As so amended, the judgment is affirmed. Each party shall bear his own costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied March 15, 1952, and appellants' petition for a hearing by the Supreme Court was denied April 3, 1952.